UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JONATHAN L. TYNER,                  :
                                    :
         Plaintiff,                 :
                                    :
v.                                  :    CASE NO. 3:08-cv-357 (HBF)
                                    :
MAGGIE CASTINADO, ET AL,            :
                                    :
         Defendants.                :


<u>MEMORANDUM OF DECISION</u>

<u>Pro se</u> plaintiff Jonathan L. Tyner brings this civil rights

action against the defendants, Bridgeport police officers George

Larrequi, E. Moralies, Rodrigues, Sepulveda, W. Simpson, and

Stepniewski, and the City of Bridgeport, for alleged violations

of 42 U.S.C. § 1983.[1]  The plaintiff claims that defendants

violated his civil rights when plaintiff was stopped and

subsequently arrested for criminal trespass.  Specifically,

plaintiff challenges the legality of the stops that led to his

arrests.[2]  Plaintiff seeks monetary damages.  A bench trial was

held on December 12, 2012.

---

[1] An Initial Review Order dated March 31, 2008 [Doc. #4], dismissed
claims against defendants Maggie Castinado and Dennis P. Harrigan.
The parties state in the Joint Pre-Trial Memorandum [Doc. #41],
that plaintiff withdraws his claims against two defendants, Officer
Geremia and Sergeant Gilleran. [Jt. Pre-Trial Memo., ¶6(a) and (b),
Doc. #41].

[2] The parties clarified at the pre-trial conference, and the Court
on the record prior to the start of trial, that plaintiff's claims

At the close of plaintiff's evidence, defendants made an oral motion for judgment on partial findings under Federal Rule of Civil Procedure 52(c), "which allows the court to enter judgment as a matter of law in the moving party's favor at any point in the proceedings when the non-moving party has been fully heard on an issue during a non jury trial and the court finds against the party." Fabricated Wall Sys., Inc. v. Herman Miller, Inc., No. 3:08-cv-01313 (SRU), 2011 WL 5374130, at *1 (D. Conn. Nov. 8, 2011) (citing Fed. R. Civ. P. 52(c); AmBase Corp. v. SDG Inc., No. 3:00CV1694(DJS), 2005 WL 1860260, at *2 (D. Conn. Aug. 3, 2005)). "A Rule 52(c) motion made by a defendant may be granted where the plaintiff has failed to make out a prima facie case or where the plaintiff has made out a prima facie case but the court determines that a preponderance of the evidence goes against the plaintiff's claim." Fabricated Wall Sys., 2011 WL 5374130, at *1 (citation and internal quotations omitted). Accordingly, "[t]he court's task on such a motion is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies […] Rule 52(c) implies the same inquiry the court makes to resolve all of the legal and factual matters under Rule 52(a)." Id.

---

do not challenge his arrests, but rather the legality of the initial stops that led to his arrests.

Plaintiff presented only his testimony.  All of defendants' exhibits were entered into evidence by agreement of the parties. After considering plaintiff's testimony, as well was the documentary evidence, the Court granted defendants' oral motion for judgment on partial findings, and found that there was reasonable suspicion when the officer defendants approached plaintiff, and probable cause to arrest plaintiff, on the dates in question.  In support of this ruling, the following constitutes the Court's findings of fact and conclusions of law pursuant to Rules 52(a) and (c).

I.    <u>FINDINGS OF FACT</u>

Based on the credible testimony, the exhibits and the entire record developed during trial, the Court finds the following facts established.

A.    **P.T. BARNUM HOUSING COMPLEX**

1.   P.T. Barnum Housing Complex ("P.T. Barnum") is a federally subsidized housing project located in Bridgeport, Connecticut, that has a reputation for drug-trafficking, robberies, assaults, and other violent crimes.  [Def. Exs. 502, 1; 503, 1].

2.   The buildings on P.T. Barnum's premises are posted with numerous signs that state, "NO TRESPASSING OR LOITERING ON THIS PROPERTY".  [Def. Exs. 502, 1; 503, 2; 514-522].

3.   Plaintiff admitted at trial that P.T. Barnum's entire premises, including the streets running between its buildings, are enclosed by a wrought-iron fence.  [See also Def. Ex. 523].

4.   Plaintiff does not reside in P.T. Barnum, and did not reside there on the dates in question.

**B.   *JULY 21, 2006 ARREST***

5.   On July 21, 2006, Officers Simpson and Moralies[3] were assigned to assist housing officers during a stop and talk detail in P.T. Barnum. [Def. Ex. 502, 1].

6.   The police report dated July 21, 2006 states that Officers Simpson and Moralies observed a "black male" operating a "CT Combo 6CT 494" green Nissan Maxima "in the main drive of PT Barnum".  [Id. at 2].

7.   Officers Simpson and Moralies identified the driver of the green Nissan Maxima as plaintiff, an individual known to the officers who does not live in P.T. Barnum. [Id.].

8.   The July 21, 2006 police report states that Officers Simpson and Moralies, and other police officers, had warned plaintiff not to be on P.T. Barnum's premises. [Id.].

---

[3] Defendant Moralies is identified as "Moralies" in plaintiff's amended complaint [Doc. #5], and in the Joint Pre-Trial Memorandum [Doc. #41].  However, the police report for this date, and others, refer to an officer as "E. Morales".  It is apparent to the Court that Officer Moralies is Officer "Morales".  For the purpose of this ruling, and for the sake of continuity, the Court will refer to this defendant as Officer Moralies.

4

9.   Subsequent to observing plaintiff driving the Nissan Maxima, Officers Simpson and Moralies canvassed P.T. Barnum, and located the vehicle parked between P.T. Barnum buildings 5 and 6. [Id.].

10.   While Officers Simpson and Moralies were canvassing P.T. Barnum, Officer Gulino issued plaintiff an infraction for simple trespass, and ordered plaintiff to leave P.T. Barnum. [Id. at 3; Def. Ex. 512].[4]

11.   After locating plaintiff's vehicle, the officers ran the vehicle's license plate through "CAD", which reported the license plate as stolen.  [Def. Ex. 502, 2].

12.   Officers Simpson and Moralies then attempted to locate the driver of the Nissan Maxima, and observed a "black male approximately 6'2" wearing a blue and white striped color shirt and with blue jeans" standing on the main drive of P.T. Barnum. The officers recognized this individual as plaintiff.  Officer Simpson identified plaintiff as the driver of the Nissan Maxima, and plaintiff was subsequently arrested. [Id. at 2-3].

13.   A search incident to plaintiff's arrest produced keys to the Nissan Maxima. [Id. at 3].

---

[4] At the time plaintiff was issued the infraction, Officers Simpson and Moralies had not yet run the Nissan Maxima's license plate. [Def. Ex. 502, 3].  Officers Simpson and Moralies were not aware that plaintiff had been issued an infraction for trespassing until plaintiff was processed at booking. [Id.].

14.  The officers took plaintiff to booking and, during his processing, two baggies of marijuana were found on plaintiff's person. [Id.].

15.  In connection with the July 21, 2006 arrest, plaintiff was charged with the following violations of the Connecticut General Statutes: § 53a-109, criminal trespass in the third degree; § 21a-279c, possession of marijuana; § 14-147a, theft or possession of a number plate; § 14-215, operating under suspension; § 14-18, improper display of number plates; and § 14-13, failure to carry registration. [Def. Exs. 502, 3; 511; 512].

16.  Plaintiff pleaded guilty to the charges of possession of marijuana and operating under a suspended license. [Def. Ex. 511, 512].  The rest of the charges were nolle prossed as part of a plea agreement. [Id.].

**C.   *JULY 28, 2006 ARREST***

17.  On July 28, 2006, reporting officers Rodrigues and Larrequi[5] were assigned to P.T. Barnum walking detail. [Def. Ex. 503, 1].

---

[5] Officer "Larrequi" is referred to in the police report for this date, as "J. Larrequi", and in another police report as "George Larrequi".  However, for the sake of continuity, and because this officer is referred to as "George Larrequi" in plaintiff's amended complaint [Doc. #5], and the Joint Pre-Trial Memorandum [Doc. #41], this defendant shall be referred to as Officer "Larrequi".

18.  While on foot patrol, the officers spotted plaintiff on the "drive" of P.T. Barnum, walking towards building 5. [Id. at 2].  At this time, "Unit Blue II", operated by Officer Moralies, was standing by with the reporting officers. [Id.].

19.  Officer Moralies advised the reporting officers that plaintiff is a known drug dealer in P.T. Barnum, and was arrested on July 21, 2006 for criminal trespass and other charges. [Id. at 1-3].

20.  The reporting officers and cover units approached plaintiff, who was walking down the side of building 5.  As officers approached plaintiff, he dropped a white napkin out of his right hand, but quickly turned and retrieved it. [Id. at 2].

21.  Officer Rodrigues asked plaintiff why he was back in P.T. Barnum.  According to the police report, plaintiff "was unable to justify his presence in the projects after being told numerous times not to be there." [Id.].[6] Plaintiff was then placed under arrest.  [Id.].

22.  When officers inquired as to the napkin in his hand, plaintiff shoved the napkin into his rear pocket.  According to the police report, Officer Larrequi spotted a small black tinted Ziploc baggie containing an off-white rock-like substance fall

---

[6] Plaintiff testified that he told police officers that he was "visiting" P.T. Barnum.  Moreover, in proceedings at the state court level relating to plaintiff's criminal charges, he stated that he has family that lives in P.T. Barnum. [Def. Ex. 509, p. 6, lines 15-18].  The Court gives little weight to this testimony.

out of the napkin.  Officer Larrequi identified this as suspected crack-cocaine packaging. [Id.].

23.  A search of plaintiff's person incident to arrest revealed thirteen (13) more similar baggies, one (1) waxine fold containing yellowish/brown powder substance, and a half smoked marijuana cigarette. [Id. at 2-3].

24.  Officers also found on plaintiff's person $198, divided and folded separately, which, the police report states, is "consistent with the sale of narcotics." [Id. at 3].

25.  The thirteen (13) Ziploc baggies tested positive for the presence of crack-cocaine.  The one (1) waxine fold tested positive for heroin.  The marijuana cigarette tested positive for the presence of marijuana. [Id.].

26.  In connection with the July 28, 2006 arrest, plaintiff was charged with the following violations of the Connecticut General Statutes: § 21a-278a, possession of narcotics; § 21a-278b, possession of narcotics with intent to sell; § 21a-279d, possession of narcotics within 1500 feet of a school/housing project; § 21a-279c, possession of marijuana; and § 53a-109, criminal trespass. [Id. at 4].

27.  Plaintiff pleaded guilty to the possession of narcotics charge.  The remaining charges were nolle prossed. [Def. Ex. 510].

### D.   *AUGUST 4, 2006 ARREST*

28.  On August 4, 2006, Officer Geremia and Sergeant Gilleran were conducting surveillance in P.T. Barnum. [Def. Ex. 504, 1].

29.  On this date, Officer Geremia and Sergeant Gilleran observed three black males stationary amongst a moving crowd. [Id. at 2].  One of the three appeared nervous, and "seemed to approach and speak to many of the pedestrians who walked by him." [Id.].  Officers identified this individual as Troy Chappell. [Id.].  Officer Geremia and Sergeant Gilleran observed Chappell making apparent narcotics transactions. [Id. at 2-3].

30.  The police report indicates that from time to time, Chappell would walk over to an individual, who was later identified as plaintiff. [Id. at 2].  Although Chappell and plaintiff conversed several times during observation, officers did not observe Chappell and plaintiff exchanging money or narcotics. [Id. at 2-3].

31.  Officers arrested Chappell after observing him making a third "hand to hand transaction".[7] [Id. at 3; Def. Ex. 504 Add., 1-2].

---

[7] While in booking, police found narcotics and U.S. currency on Chappell's person. [Def. Ex. 504, 3-4].  Chappell was charged with possession of narcotics, possession of narcotics with intent to distribute, possession of narcotics within 1500 feet of a housing project, and criminal trespass in the third degree. [Id. at 4].

32.  While escorting Chappell to a waiting patrol car, Officer Rodrigues recognized plaintiff as part of a crowd congregating and witnessing the arrest. [Def. Ex. 504 Add., 1-2].

33.  Officers Rodrigues and Larrequi had previously had "several interactions" with plaintiff, and had arrested him the week prior for narcotics violations and criminal trespass. [Id. at 2].

34.  "Knowing that [plaintiff] had no right to be in the federally subsidized housing project", Officer Rodrigues asked Sergeant Stepniewski to place plaintiff under arrest for criminal trespass. [Id.].

35.  Plaintiff testified that during the arrest of Chappell, he was standing in the crowd witnessing the arrest, and not causing any problems. Plaintiff further testified that he was singled out from the crowd of observers and arrested.

36.  Plaintiff provided Sergeant Stepniewski with an address of 37 Velvet Street.  Plaintiff failed to provide a valid reason for being in P.T. Barnum. [Def. Ex. 504, 4].

37.  Plaintiff was charged with criminal trespass in the third degree in violation of Connecticut General Statutes section 53a-109.  [Id.].  Plaintiff testified that this charge was later dropped as part of a plea agreement for the narcotic charges.

### D.   *AUGUST 6, 2006 ARREST*

38.   On August 6, 2006, Officers Sepulveda and Larrequi were assigned to work detail at P.T. Barnum. [Def. Ex. 505, 1].

39.   On this date, Officers Sepulveda and Larrequi observed plaintiff walking between the buildings on P.T. Barnum's premises. [Id.].

40.   Upon observing plaintiff, Officers Sepulveda and Larrequi exited their patrol car and detained plaintiff. [Id.].

41.   The police report for this date states that, "[plaintiff] has been advised several times in the past not to trespass in P.T. Barnum Apts. and [plaintiff] has also been arrested in the past for criminal trespass 3rd several times[…]" [Id. at 1-2].

42.   On this date, plaintiff was arrested and charged with criminal trespass in the first degree in violation of Connecticut General Statutes section 53a-107.  [Id. at 2]. Plaintiff testified that this charge was later dropped as part of a plea agreement for the narcotic charges.

## II.   CONCLUSIONS OF LAW

Plaintiff alleges that defendants violated his rights under the Fourth Amendment to the United States Constitution by arresting him on a public street for criminal trespass.  At the pre-trial conference, the plaintiff clarified that his claims do not challenge his arrests, but rather the legality of the stops

11

that led to his arrests.  Specifically, plaintiff asserts that the officer defendants did not have sufficient reasonable suspicion to stop him on the occasions that he was arrested, and that the officers' suspicion was more generalized in nature. The question before this Court is whether plaintiff has sustained his burden of proof on his claims. For the reasons that follow, the Court concludes that plaintiff has failed to sustain his burden of proof and finds in favor of the defendants.

**A.   APPLICABLE LAW**

The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. 4. "It is well settled that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.'" United States v. Gomez, 633 F.2d 999, 1004 (2d Cir. 1980) (quoting Terry v. Ohio, 392 U.S. 1, 22 (1968)).  "Under Terry, a police officer is free to approach a person in public and ask questions while taking objectively reasonable steps to protect himself and others in view of the dangers that the officer's judgment and experience indicate might exist." United States v. Jones, No.

3:99CR264(AHN), 2003 WL 2365032, at *4 (D. Conn. Oct. 31, 2003) (string citation omitted).

"An officer need only have a reasonable suspicion that criminal activity is afoot before subjecting a person to an investigatory stop." Gomez, 633 F.2d at 1004 (citing United States v. Vasquez, 612 F.2d 1338, 1342 (2d Cir. 1979)); see also Jones, 2003 WL 2365032, at *4 (citing Terry, 392 U.S. at 22) ("[O]fficers can stop and question a suspect if they have reasonable suspicion of unlawful conduct."). It is well settled that "reasonable suspicion must arise before a search or seizure is actually effected", and "the reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." United States v. Swindle, 407 F.3d 562, 568 (2d Cir. 2005) (quoting Florida v. J.L., 529 U.S. 266, 271 (2000)). Indeed, "the officer must be able to articulate the specific and objective facts that form the basis for that reasonable suspicion." Gomez, 633 F.2d at 1004 (citing United States v. Buenaventura-Ariza, 615 F.2d 29, 33 (2d Cir. 1980)).

It is also well established that an arrest without a warrant is valid if it is supported by probable cause. Wong Sun v. United States, 371 U.S. 471, 279 (1963). Probable cause exists where "the facts and circumstances within [the officer's] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of

reasonable caution in the belief that an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949).

B.   **DISCUSSION**

The Court must consider the "totality of the circumstances to see whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing" on the four dates in question.   Swindle, 407 F.3d at 570 (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)).   For the reasons set forth below, the Court finds that the plaintiff failed to sustain his burden of proof that the officer defendants did not have the requisite reasonable suspicion to stop plaintiff on the dates in question.   Although not apparently challenged by plaintiff, the Court nevertheless finds that plaintiff's arrests were supported by sufficient probable cause.

### 1. Trespass on a "City Street"

At trial, plaintiff repeatedly stated that he could not be arrested for trespass on a "city street", i.e., the streets within the P.T. Barnum complex.   As an initial matter, the Court rejects this argument.

The Connecticut statutes provide for criminal trespass in the first, second, and third degrees.   See Conn. Gen. Stat. §§ 53a-107 – 53a-109. Plaintiff was arrested for criminal trespass in the third degree on July 21, 2006; July 28, 2006; and August

14

4, 2006. Connecticut General Statutes section 53a-109 governs criminal trespass in the third degree, and states in relevant part that,

> (a) A person is guilty of criminal trespass in the third degree when, knowing that such person is not licensed or privileged to do so: (1) Such person enters or remains in premises which are posted in a manner prescribed by law or reasonably likely to come to the attention of intruders or are fenced or otherwise enclosed in a manner designed to exclude intruders, or which belong to the state and are appurtenant to any state institution […].

Conn. Gen. Stat. § 53a-109(a)(1). The Commission Comment to this statute states that, "This section […] aims at the intrusion into premises which are posted, fenced or otherwise enclosed in a manner designed to exclude intruders. It should be noted that unfenced and unenclosed open premises are not protected." Conn. Gen. Stat. § 53a-109, Comm'n Cmt (emphasis added); see also United States v. Breedlove, 424 F. Supp. 2d 379, 385 (D. Conn. 2006) (same).

Plaintiff admitted at trial that the entire P.T. Barnum complex, including the streets running between the buildings, is surrounded by a wrought-iron fence. The documentary evidence supports this. See Def. Ex. 523. Additionally, the premises of P.T. Barnum are marked with "NO TRESPASSING OR LOITERING ON THIS PROPERTY" signs. [Def. Exs. 502, 1; 503, 2; 514-522]. The Court finds that P.T. Barnum is sufficiently enclosed and posted

to exclude intruders, as contemplated by Connecticut General Statutes section 53a-109. After the close of plaintiff's evidence, plaintiff stated that there are no signs on the wrought-iron fence stating "no trespassing". Even if the Court were to consider this statement, which it does not, it would still find that P.T. Barnum is sufficiently enclosed for purposes of section 53a-109. See, e.g., State v. Robinson, 290 Conn. 381, 382-83, 963 A.2d 59 (2009) (Connecticut Supreme Court held that a multifamily housing project was sufficiently enclosed to support a finding of probable cause for arresting a suspect for criminal trespass in the third degree where the project was enclosed by a chain link fence on three sides and a cement wall on one side; had a gateless entryway facing the street that allowed pedestrians access to a courtyard; and there was no sign prohibiting entry posted on the premises).

On August 6, 2006, plaintiff was arrested for criminal trespass in the first degree. Connecticut General Statutes section 53a-107 governs criminal trespass in the first degree, and states in relevant part that,

> (a) A person is guilty of criminal trespass in the first degree when: (1) Knowing that such person is not licensed or privileged to do so, such person enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to such person by the owner of the premises or other authorized person […]; or (4) knowing that such person is not licensed or privileged to do so, such person

16

> enters or remains on public land after an order
> to leave or not to enter personally communicated
> to such person by an authorized official of the
> state or a municipality, as the case may be.

Conn. Gen. Stat. § 53a-107(a)(1) and (4).  The Commission
Comment to this statute states that, "This section is the most
serious degree of the crime of trespass.  It aims at the
situation where the actor enters or remains in premises in
defiance of an order not to enter, or to leave, personally
communicated to him by an authorized person.  Two elements are
important to note here: (1) any premises are protected by this
section; (2) the order must be personally communicated to the
actor." Conn. Gen. Stat. § 53a-107, Comm'n Cmt (emphasis added).

As set forth in the commission comment, section 53a-107
applies to "any premises".  Id.  Section 53a-107 is also
applicable to "public land".  Conn. Gen. Stat. § 53a-107(a)(4).
Moreover, this District has recognized an arrest for criminal
trespass in the first degree for trespass on P.T. Barnum's
premises.  See United States v. Nunley, No. 3:99CR264(AHN), 2002
WL 32086480, at *1-2 (D. Conn. Oct. 8, 2002) (finding probable
cause to support an arrest for criminal trespass in the first
degree in violation of Conn. Gen. Stat. § 59a-107, where
defendant was observed loitering on P.T. Barnum premises by
officers who had warned defendant not to loiter within the
project, and who knew defendant did not live in the project).

17

As such, the Court rejects plaintiff's position that he could not be arrested for trespass on a city street.

### 2. July 21, 2006 Arrest

Based on the established facts, Officers Simpson and Moralies had sufficient reasonable suspicion to conduct an investigatory stop of plaintiff on this date.  At the time officers stopped plaintiff, they knew (1) that P.T. Barnum is a high crime area that has a reputation for narcotics trafficking and violence; (2) that P.T. Barnum is posted with "no trespassing" and "no loitering" signs; (3) that plaintiff does not live in P.T. Barnum; (4) that plaintiff had previously been warned not to be in P.T. Barnum; and (5) that the license plate on the vehicle officers observed plaintiff driving, was reported as stolen.[8]  Knowing this information, the officers observed plaintiff loitering on P.T. Barnum's premises and identified him as the driver of the Nissan Maxima. Thus, under the totality of the circumstances, the Court finds that the officers had reasonable suspicion to stop plaintiff to inquire whether or not he was permitted to be there, and whether the Nissan Maxima was

_____

[8] Plaintiff does not raise an issue with the search of the Nissan Maxima's license plate.  Nevertheless, this District has recognized that examination of a vehicle's license plate does not constitute a search.  Marshall v. Town of Middlefield, No. 3:10cv1009(JCH), 2012 WL 601783, at *3 n.2 (D. Conn. Feb. 23, 2012) (citing cases).

in fact his.[9]  Accordingly, plaintiff has failed to meet his burden on the claim arising out of the July 21, 2006 arrest.[10]

### 3. July 28, 2006 Arrest

Based on the established facts, Officers Rodrigues and Moralies had sufficient reasonable suspicion to conduct an investigatory stop of plaintiff on this date.  At the time officers stopped plaintiff, they knew (1) that P.T. Barnum is a high crime area that that has a reputation for narcotics trafficking and violence; (2) that P.T. Barnum is posted with "no trespassing" and "no loitering" signs; (3) that plaintiff is a known drug dealer in P.T. Barnum; and (4) that plaintiff was arrested on July 21, 2006 for criminal trespass and possession of marijuana, among other charges.  Knowing this information, the officers observed plaintiff loitering on P.T. Barnum premises, and found that he was unable to justify his presence at the housing project.  Thus, under the totality of the circumstances, the Court finds that the officers had reasonable suspicion to stop plaintiff to inquire whether or not he was

---

[9] Although plaintiff does not apparently challenge the existence of probable cause supporting his arrest, the Court nevertheless finds that this warrantless arrest was supported by sufficient probable cause, as the officers reasonably believed that an offense was being committed based upon the information known to them at the time of the arrest.

[10] C.f. Illinois v. Wardlow, 528 U.S. 119, 124 (2000)("an individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.") (emphasis added).

permitted to be there.[11]  Accordingly, plaintiff has likewise
failed to meet his burden on the claim arising out of the July
21, 2006 arrest.

     *4. August 4, 2006 Arrest*

    There are some discrepancies in the testimony regarding
plaintiff's arrest.  Plaintiff testified on cross-examination
that he was stopped and questioned by officers prior to being
arrested.  On re-cross examination, plaintiff stated that he was
immediately taken into custody and he was not stopped and
questioned.  The police report for this date further indicates
that Officer Rodrigues arrested plaintiff after observing him
loitering amongst a crowd of people in P.T. Barnum.

    At the conclusion of plaintiff's evidence, the defendants
argued that plaintiff cannot maintain a claim that these officer
defendants lacked sufficient reasonable suspicion to stop
plaintiff where there was no investigatory stop.  To the extent
that this incident did not involve a <u>Terry</u> stop, the Court
nevertheless finds that the officer defendants had the requisite
probable cause to arrest plaintiff for criminal trespass in the
third degree.  On this date, Officers Rodrigues and Larrequi,
and Sergeant Stepniewski[12] knew (1) that P.T. Barnum is a high

---

[11] <u>See</u> note 9, <u>supra</u>.

[12] "[W]here law enforcement authorities are cooperating in an
investigation…, the knowledge of [an officer] is presumed to be

crime area that that has a reputation for narcotics trafficking and violence; (2) plaintiff had been arrested one week prior for narcotics violations and criminal trespass at P.T. Barnum; and (3) plaintiff had no right to be in P.T. Barnum.  Knowing this information, Officer Rodrigues observed plaintiff on P.T. Barnum premises, which are sufficiently enclosed for purposes of section 53a-109, and directed Sergeant Stepniewski to arrest plaintiff.  Thus, under the totality of the circumstances, the Court finds that the officers had probable cause to arrest plaintiff on this date for criminal trespass in the third degree.  Moreover, to the extent there may have been an investigatory stop before his arrest, the Court finds that officers would have had reasonable suspicion to believe crime was "afoot" given their knowledge of plaintiff's recent history, and their observation of plaintiff on P.T. Barnum's premises. As such, plaintiff has failed to meet his burden on the claim arising from this arrest.

### 5. August 6, 2006 Arrest

Plaintiff testified that when he encountered Officers Sepulveda and Larrequi on this date, he was immediately arrested.  The police report for this date further states that, "[Reporting officers] observed [plaintiff] walking between the

shared by all."  Jones, 2003 WL 23653032, at *3 (quoting Calamia v. City of New York, 579 F.2d 1025, 1032 (2d Cir. 1989)).

buildings in P.T. Barnum Housing Complex. [Reporting officers] exited our patrol vehicle and detained [plaintiff]." [Def. Ex. 505, 1]. From the testimony of plaintiff, and the police report in evidence, it does not appear that plaintiff was subjected to an investigatory stop, but rather was arrested without a warrant for criminal trespass in the first degree.

Although plaintiff does not appear to challenge the probable cause for his arrest, the Court nevertheless finds that the officer defendants had sufficient probable cause to arrest plaintiff for criminal trespass in the first degree. The officer defendants knew plaintiff had been advised not to trespass in P.T. Barnum, and had in fact been recently arrested multiple times for criminal trespass.[13] Knowing this information, the officer defendants observed plaintiff walking between the buildings of P.T. Barnum.

Plaintiff testified at trial that at no time did anyone from P.T. Barnum tell him that he was not allowed on their premises. Although the court credits this testimony, the plaintiff fails to consider the language of the criminal trespass statute which provides that an authorized person may communicate an order to leave. See Conn. Gen. Stat. § 53a-107(a)(1) and (4). Plaintiff furthermore failed to present any

---

[13] Officer Larrequi was one of the reporting officers at plaintiff's July 28, 2006 and August 4, 2006 arrests for criminal trespass. [Def. Exs. 503; 504 Add.].

evidence that the officer defendants were not authorized persons as contemplated by the statute. Moreover, although a P.T. Barnum official may have never told plaintiff that he was not permitted on P.T. Barnum's premises, the Court finds it hard to believe that plaintiff was not aware that he was not permitted on the property in light of his three (3) previous arrests for criminal trespass. Accordingly, the Court finds, under the totality of the circumstances, that the officers had probable cause to arrest plaintiff for criminal trespass in the first degree, and that plaintiff has failed to meet his burden in this regard. See Nunley, supra.

### 6. Claim of Generalized Suspicion

Finally, to the extent that plaintiff claims the officer defendants' suspicions were not directed at plaintiff individually, but at him generally on the basis of race, this is refuted by the language of the police reports, which indicate that the officer defendants knew of plaintiff's history, and that he had been warned not to trespass in P.T. Barnum. Race alone will not support a Terry stop under the Fourth Amendment. See Brown v. City of Oneonta, New York, 235 F.3d 769,776 n.3 (2d Cir. 2000) (string citation omitted). However, as detailed in the Court's findings of fact, the language of the police reports indicates that the officer defendants' suspicions leading to the stops and/or the arrests were particularized on plaintiff's

individual history and circumstances, not plaintiff's race. Accordingly, plaintiff has failed to meet his burden of proof on this claim.

## III.   CONCLUSION

As such and based on the foregoing, plaintiff has failed to prove by a preponderance of the evidence that defendants violated 42 U.S.C. § 1983.  Therefore, judgment is entered in favor of defendants.[14]

This is not a Recommended Ruling.  The parties consented to proceed before a United States Magistrate Judge [Doc. # 38] on October 31, 2012 with appeal to the Court of Appeals.  Fed. R. Civ. P. 73(b)-(c)

ENTERED at Bridgeport this 8th day of May 2013.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

---

[14] Plaintiff failed to present any evidence as to any claim(s) asserted against the City of Bridgeport.  Accordingly, and in light of its conclusions of law, the Court finds that plaintiff failed to meet his burden of proof on any claims asserted against the City of Bridgeport, and judgment is entered in its favor.